# KIDD et ux. v. TENNESSEE GAS CO.
# FINLEY v. TENNESSEE GAS CO.—
## 231 S. W. (2d) 793.

Eastern Section.  February 25, 1950.

Petition for Certiorari denied by Supreme Court, June 9, 1950.

Goddard & Gamble, of Maryville, and Jennings, O'Neil & Jarvis, of Knoxville, for plaintiff.

Kramer, McNabb & Greenwood, of Knoxville, and McCanless & Taylor, of Morristown, for defendants.

BAPTIST, J.   These two suits in the Circuit Court of Blount County against the defendant, Tennessee Gas Company, were by agreement tried together and the record preserved in one bill of exceptions.

The suit of the plaintiff, H. H. Kidd and wife, Blanche Kidd, is to recover damages for the destruction of a store building, and that of the plaintiff, R. B. Finley, to recover damages for the destruction of fixtures and a stock of merchandise which were in the store building.

It is alleged that the defendant had installed in the store building a gas heater which was defective; that the

plaintiff, Finley, notified the defendant of the defect; that the defendant failed to correct or repair such defect, as a result of which the gas escaped into the store building, causing an explosion which resulted in a fire, destroying the store building and contents.

There was a jury verdict in favor of the plaintiffs, Kidd and wife, in the amount of $8,000, and in favor of the plaintiff, Finley, in the amount of $11,500.

The defendant's motions for new trials having been overruled, the defendant has appealed to this Court in the nature of a writ of error and assigned errors.

The plaintiffs have filed a motion in this Court to affirm the judgments in the Circuit Court upon the ground that the bill of exceptions shows affirmatively that it does not contain all the evidence introduced.

The motion is based upon the fact that in trial the defendant set up in the courtroom a gas heater claimed to be like or similar to the one in the store building and was made an exhibit to the testimony of the witness, P. A. Ray. This heater was connected with pipes to the gas main of the defendant and a demonstration was made by the witness of its operation. It is contended that in this demonstration the witness indicated by gesticulations the way the heater was operated and all of these operations and including the gesticulations and the pointings of Mr. Ray cannot be reproduced here.

The plaintiff has cited a number of cases in which it was held that the bill of exceptions did not contain all of the evidence heard or seen in the trial court. We do not think it necessary to review these cases. Suffice it to say that in these cases it appeared that material exhibits such as maps, deeds, mortgages, drawings, the

oral testimony of witnesses and depositions were not included in the bill of exceptions.

In the instant case the gas heater was introduced as an exhibit and properly identified by the trial judge and therefore is a part of the bill of exceptions.

█ As to the gesticulations and pointings of the witness, the manner and demeanor of a witness are parts of the evidence to be weighed by the jury and the trial judge, but which cannot appear in a bill of exceptions.

The motion is disallowed.

The defendant's assignments of error are to the action of the trial judge in failing and refusing to instruct the jury to return a verdict in favor of the defendant at the close of all the proof, and in failing and refusing to grant the defendant a new trial on the ground that there is no material evidence to sustain the verdict of the jury.

█ As to the first assignment of error, it was the duty of the trial judge, and is the duty of this court, in considering the defendant's motion for a directed verdict, to look to all the evidence, to take as true the evidence for the plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for the plaintiffs, to allow all reasonable inferences from it in their favor; and if there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. Lackey v. Insurance Co., 30 Tenn. App. 390, 206 S. W. (2d) 806.

The plaintiffs, H. H. Kidd and wife, were the owners of the store building here involved. The building was located in Blount County, Tennessee, at a point near the city of Maryville and in a community known as Five Points.

This building had been rented by the plaintiff, R. B. Finley, and he was operating a grocery store therein on December 2, 1947, when the explosion and fire, the basis of these lawsuits, occurred.

Some time before this explosion and fire, Finley had purchased from the defendant a gas heater, which had been installed by the defendant, and connected with its gas main. The building was approximately 45 by 50 feet in size. The gas heater was suspended from the ceiling, about 8 feet from the back wall at about the center of the two side walls. After this installation the heater was furnished with gas by the defendant.

The defendant agreed to maintain and keep up the heater at all times.

The explosion occurred in the early morning of Tuesday, December 2d, the store being open for business, but none of the plaintiffs were present at the time. The building and contents were destroyed by fire following the explosion.

. According to the testimony of the plaintiff, R. B. Finley, on Friday before the explosion on Tuesday, he called the office of the defendant over the telephone and reported to the lady in the office that the gas would not burn, that the heater would go out; the lady replied she would get somebody there as soon as possible; that when the heater was out you would smell gas almost continuously; that no one came, and on Saturday he called the office of the defendant in the morning and again in the afternoon by telephone and reported that the heater would not burn and the lady promised to send someone immediately; that on Sunday he called the defendant's telephone number, but no one answered; that again on Monday he called the office of the defendant twice and

told them the heater was not working and to send some-one to fix it; that on Monday night, Mr. Everett, the defendant's service man, was in the store but did nothing to the heater, as it was working at that time; that he detailed to Everett the trouble he had been having with the heater; that the store was operated 24 hours a day; that on Monday night he left the store in charge of a clerk at about 10 or 10:30; that he was at home when the explosion occurred; that it was a very loud, rumbling noise like a loud clap of thunder, after which he heard some other noises like firecrackers or pistols.

Mrs. Finley, wife of the plaintiff, R. B. Finley, testi-fied that she had worked in the store for a considerable time prior to the fire; that the gas heater had been giving trouble for two or three weeks before; that she called the Gas Company twice on Friday before the fire and asked them to send somebody to see about it; that on Saturday she called the defendant, and her husband also called; that on Monday the heater gave trouble and she smelled gas; that you could always smell a little of the gas; that after you got used to it you did not notice but when you went outside and came back you could notice it; that at the time of the explosion she was at home in bed but awake; that it was a loud explosion; that they got up and got the car and went to the fire; that they then heard firecrackers.

P. P. Payne testified that prior to the fire he was in the store building and smelled gas.

H. O. Jones testified that he was a traveling salesman; that he used butane gas in his home; that he was in the store building about 9 o'clock on Monday, December 1; that he was familiar enough with butane gas to know

the odor; that when he came into the store he smelled gas.

Mitchell Hammontree testified that he lives about 180 feet from the store building; that he was asleep and wakened by the explosion; that he never heard anything like it; that it was a report like dynamite; that it shook the house and windows; that he got up immediately and saw the fire in the building; that the windows were all out and the blaze was lapping out of the windows.

Jake Whitehead testified that he worked at an aluminum plant a mile or more from the store building; that he was inside the plant and heard the explosion; that it sounded like dynamite.

Ernest Caylor testified that he worked at the same plant and heard the explosion like a big blast going off.

Mrs. Edward Rudd testified that she lived in the vicinity of the store building; that she was awakened by the explosion, which jarred the house.

J. T. Gastin testified that he lived just across the street from the store building; that he was up getting his breakfast when he heard the explosion; that it jarred the building and shook the glass in the house; that he walked about six feet to the door and fire was coming out of the store building like a wave.

Kenneth Rigsby testified that he and his brother, Paul Rigsby, went to the store about 4 o'clock Tuesday morning for the purpose of buying some food to carry on a hunting trip which they planned for that morning; that the night clerk, Claude Hyatt, was at the checkout counter near the front door and they were all talking; that the store was cold inside; that they were in there a short time when all at once there was a loud,

hard explosion, which sounded like a bomb going off and which knocked him unconscious; that he didn't know how he got out of the store and didn't regain consciousness until he waked up in the hospital; that he had cuts on his face and neck.

Paul Rigsby testified that when he got in the store he walked back about middle ways or past; that Kenneth walked back and past where he was and was talking to Claude Hyatt; that all of a sudden just everything blew up; that he thought Claude Hyatt was trying to sell Kenneth some fireworks; that he believed he saw Claude Hyatt with some fireworks in his hands; that all of a sudden there was a big roar and you could hardly see anything; that he looked up and saw the blaze through the smoke; that he could not tell how far the blaze was from the ceiling because the smoke was so heavy; that he started to the door and before he got to the door he felt things hitting his legs; that he had one bad burn in his back and several small ones and several cuts on his legs; that Kenneth came out of the window immediately after he did; that the whole inside was ablaze before he got out of the building.

Dr. F. A. Griffitts, a chemistry professor, testified as to composition of butane gas of carbon and hydrogen; that both of these compounds produce a high degree of heat; that it is highly combustible; that if ignited in a closed building it would expand the gas and cause an explosion, the amount of noise depending on the amount of gas and the amount of increase in temperature; that when butane gas is ignited it produces a black smoke; that if ignited in a building it would likely set the building on fire; that the effect on the building from expansion was relative to the amount of heat produced; that

it might blow out the side of a building depending on the volume.

■ Under this evidence, we think the trial judge was clearly correct in overruling the motion for a directed verdict.

The defendant cites the case of Cleveland Gas Co. v. Woolen, 30 Tenn. App. 282, 205 S. W. (2d) 754, 757, in which, quoting from 38 C. J. S., Gas, sec. 47 c (1), it is said: " 'In an action for injury resulting from an escape or explosion of gas, the burden of proof rests on plaintiff to prove the facts constituting his cause of action. Hence plaintiff must prove that the cause of the injury was escaping gas, that such gas belonged to the defendant company, that it escaped through the negligence of the company, that it accumulated in the place where the injury occurred, and that defendant's negligence proximately caused the damage. It is not necessary, however, for plaintiff to show how the gas became ignited.' (Emphasis supplied) 38 C. J. S., Gas, sec. 47 c (1)."

The contention is that there is no material evidence that gas was accumulated in the store building at the time the explosion occurred.

There is evidence that for several days prior to the explosion the gas heater was out of order, by reason of which there was a constant odor of escaping gas.

There is testimony that when the gas heater would go out gas would escape and the room would get cold and that this would occur four or five times each day; that at the time of the explosion the room was cold.

The defendant contends that the evidence points clearly to the fact that the fire was started in the store building by the ignition of one or more firecrackers.

This contention is based on the fact that there were firecrackers in the store; that Paul Rigsby testified that he heard Hyatt ask Kenneth if he needed any firecrackers and that he thought he saw Hyatt with fireworks in his hand immediately before the explosion.

That there was expert medical testimony that the burns of Paul Rigsby were not the type caused by a gas fire; also expert testimony that a gas explosion would shatter the walls of the building, and that there was testimony that the walls were standing until consumed by fire.

This testimony and the circumstances were matters for the consideration of the jury, and not a matter of law for the Court to determine.

As said in the Cleveland Gas Co. v. Woolen, supra, the burden of proof was upon the plaintiffs to prove the facts constituting their cause of action.

The insistence seems to be that because no one testified directly as to the cause of the explosion there is no evidence upon which a jury verdict could be based.

In the case of Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S. W. (2d) 85, 88, Chief Justice Green points out that in a civil case a preponderance of evidence carries the burden whether the evidence be direct or circumstantial and says:

"(4) The general rule is that it is sufficient in a civil case depending on circumstantial evidence, for the party having the burden of proof to make out the more probable hypothesis and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion. 23 C. J. 49; Jones' Com. on Evidence (2 Ed.) Vol. 1, sec. 12.

"Speaking of circumstantial evidence in a civil case, this court said in Marquet v. Aetna Insurance Company, 128 Tenn. 213, 225, 159 S. W. 733, L. R. A. 1915B, 749, Ann. Cas. 1915B, 677:

" 'Proof of the essential fact must be had, either direct or positive by witnesses who know the fact, or circumstantial by witnesses who know and testify to facts which tend to establish or prove the essential fact; and only when the circumstances are, in the judgment of the court, or jury, such as usually or necessarily attend the essential fact are they sufficient in law to warrant a verdict, judgment, or decree establishing as a fact that which has not been proved by direct or positive evidence.'

"(5) Here is a distinct recognition that circumstances which usually attend the essential fact may be taken as establishing that fact in a civil case."

We quote from 32 C. J. S., Evidence, sec. 1039: "A well connected train of circumstances is as cogent of the existence of the fact as any array of direct evidence, and may outweigh opposing direct testimony; and the concurrence of well authenticated circumstances has been said to be stronger evidence than positive testimony unconfirmed by circumstances."

The circumstances proven by the plaintiff are sufficient to submit to the jury the question as to whether the destruction of the building and contents was caused by the accumulation of butane gas in the building.

Referring to the case of Cleveland Gas Co. v. Woolen, supra, and the facts necessary to be proven by the plaintiff, there is material evidence that the injury was caused by escaping gas, that such gas belonged to the defendant, that it escaped through the negligence of the defendant, that it accumulated in the place where the injury oc-

curred, and that defendant's negligence proximately caused the damage.

If gas accumulated in the building by reason of the negligence of the defendant, it is not necessary for the plaintiff to show how the gas became ignited to make out a prima facie case. To avoid liability in such case it is incumbent on the defendant to show that the damage was caused by some independent intervening agency for which it is not responsible and which it could not have reasonably anticipated. Such was the holding in Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1234. The present case would present a situation analogous to that in the Moody case if there were any substantial evidence that the gas was ignited by the independent act for which the defendant was not responsible. There is no such substantial evidence offered in this case. The theory of the defendant that the gas was ignited by firecrackers is purely speculative and without any support in the evidence.

In the brief the defendant calls the Court's attention to the fact that Claude Hyatt, who was a clerk in the store at the time of the fire, was not called as a witness by the plaintiff.

It is stated that Hyatt was not subpoenaed as a witness until the close of the first day of the trial when a return was made "not found"; and that plaintiff made no application to continue the case on account of his absence.

That it is the rule when a witness possessing peculiar facts in reference to a cause of action, especially a witness who would be naturally favorable to the party, is not called as a witness, a presumption arises that his testimony would not sustain the contention of such party.

■ We think this matter was disposed of by the trial judge in giving in charge to the jury a special request tendered by the defendant as follows: ''If either party knows of a witness who is in possession of knowledge which is material to the issues of the case and fails to produce such witness, and also fails to account for the absence of such witness, the presumption is that the testimony or evidence of such witness will be detrimental to the party failing to produce or account for such witness.''

No question is made as to the value of the property destroyed, or the amounts of the judgments.

The defendant's motion for a directed verdict was properly overruled.

We have already heretofore stated that in our opinion, there is material evidence to support the verdict.

For the reasons assigned, the assignments of error are overruled and the judgments of the Circuit Court affirmed.

Judgments will be entered in this Court against the defendant, Tennessee Gas Company, and in favor of the plaintiffs, H.. H. Kidd and his wife, Blanche Kidd, for $8,000; and in favor of the plaintiff, R. B. Finley, for $11,500, both of said judgments to bear interest from date of the judgment in the Circuit Court.

The defendant will pay the costs.

Anderson, P. J., and Swepston, J., concur.