**In re ESTATE OF Solon J. PARSLEY, Deceased.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 3, 1988.

Certiorari Denied by Supreme Court Sept. 26, 1988.

Lionel R. Barrett, Jr., Nashville, for appellant.

Thomas J. Miner, Smith & Miner, McMinnville, for appellee.

Thomas Bratcher, McMinnville, for the Estate.

## OPINION

**F. LLOYD TATUM, Special Judge.**

This is an appeal by Trudie Hayes from a judgment of the Chancery Court of Warren County, setting aside conveyances by the deceased, Solon Jackson Parsley, of a 105–acre tract of land to his daughter, Trudie Hayes, and a conveyance of the same land to Bruce Pack by Trudie Hayes. The judgment also declared a transfer voidable that was made by the deceased to Trudie Hayes of $15,000.00. The basis for the trial court's judgment was that the transfers were fraudulent and made for the purpose of defeating the surviving spouse's right to her elective share of the estate in violation of T.C.A. § 31–1–105. The Court also held that the transfer of the land failed for the want of a consideration.

We will not burden this opinion with a detailed statement of the pleadings. It involved several suits against various parties on different grounds. It is not necessary for the purpose of this opinion to detail all of these issues.

Solon Jackson Parsley died on the 8th day of December, 1983, at the age of 80 years. He was survived by a daughter, Trudie Hayes and his widow, Ann Parsley. On April 21, 1982, the decedent made a deed conveying the 105–acre farm to Trudie Hayes. On November 21, 1983, Trudie Hayes conveyed the same property to Bruce Pack. On April 2, 1982, the decedent transferred $18,000.00 to $19,000.00 from a gold passbook savings account solely owned by Solon Parsley and put it into a joint certificate of deposit with Trudie Hayes. Trudie Hayes subsequently cashed $15,000.00 of the certificate of deposit.

On August 21, 1982, Solon Jackson Parsley executed a will with Trudie Hayes as the sole beneficiary. Ann Parsley dissented from the will and elected to receive such property as she would have received had her husband died intestate. As stated, the Chancellor set aside the conveyance of the land and the transfer of the Certificate of Deposit, holding that the transfers were fraudulently made to defeat Ann Parsley, the widow, of an elective share of the estate and a year's support.

Since the certificate of deposit was cashed by Trudie Hayes, the Chancellor rendered judgment against her in this amount in favor of the Solon Jackson Parsley estate.

On this appeal, Trudie Hayes presents issues that the Chancellor erred in setting aside the conveyances of the 105–acre farm and the transfer of the certificate of deposit. Bruce Pack did not appeal. After reviewing this lengthy record, we conclude that the judgment of the Chancellor must be affirmed.

The appellant, Trudie Hayes, insists that the Chancellor made incorrect findings of fact. We must review *de novo* this five-volume record of the evidence, containing numerous disputes and conflicts, with a presumption that the findings of the Chancellor are correct. Rule 13(e), T.R.A.P.

Solon Jackson Parsley married Ann Bryant on January 4, 1975. About 1981, when Solon Parsley was about 77 years of age, his mental and physical health began to significantly decline and continued to decline until his death.

In late January, 1982, Solon and Ann Parsley moved to a home owned by Ann Parsley and her sister, Yvonne Stroud, on Anderson Street in McMinnville. In January, 1982, after the parties moved to Anderson Street, Solon Parsley left home on foot and became lost, requiring neighbors and the police to search for him. On February 1, 1982, Solon's daughter, Trudie Hayes, came to the Parsley residence for the purpose of taking Solon to a doctor. After the visit to the doctor, Trudie and Solon returned to the Parsley residence on Anderson Street, but shortly thereafter Trudie took Solon home with her. She told Ann Parsley that she would bring Solon back the next day. Solon was never returned to his home with Ann Parsley on Anderson Street, but continued to live with Trudie Hayes. Trudie Hayes testified that he was on a sedative, was confused, and needed help and advice.

On the next day after Trudie took Solon to her home, she took him to the office of the County Court Clerk and the title to a mobile home which had been owned by Solon for many years, was transferred to her by Solon.

On that same day, February 2, 1982, Trudie took Solon to his bank where Solon transferred an $8,000.00 checking account which had been in the joint name of Solon and Ann Parsley, to a joint checking account bearing only the names of Solon Parsley and Trudie Hayes. Trudy Hayes then began writing checks on the account and continued to do so until a conservator was appointed for Solon.

While at the bank on February 2, 1982, a golden passbook account in the name of Solon Jackson Parsley was transferred to a certificate of deposit in the joint names of Solon Jackson Parsley and Trudie Hayes, with right of survivorship. This transfer was the basis of the $15,000.00 judgment against Trudie Hayes in favor of the Solon Parsley estate.

On the same date, February 2, 1982, Trudie Hayes drove Solon Jackson Parsley to his farm for the purpose of taking possession of property thereon. The furniture had already been moved to the Anderson Street address by Solon's wife, Ann Parsley. The tractor at that time was at the residence of Ann's brother but was in the possession of Trudie Hayes at the time of trial. Apparently other farming equipment was not located.

Also, on February 2, 1982, or within a very few days thereafter, Trudie took Solon to a lawyer who filed a suit for divorce on behalf of Solon and against Ann on February 12, 1982. When the divorce suit was filed, Ann Parsley filed a petition for the appointment of a conservator for Solon but it was not until March, 1983, when a conservator was actually appointed. A non-suit was taken in the divorce case.

On April 21, 1982, while the conservatorship proceeding was pending and before a conservator had been appointed, Solon Parsley conveyed his 105–acre farm to Trudie Hayes. This farm was valued at $89,300.00 by Trudie Hayes. The consideration for this conveyance was that Trudie Hayes would, "take care of and do whatever else may be necessary to make the grantor reasonably comfortable during his lifetime, including his hospital or medical bills, or physician if necessary." However, after this deed was executed and recorded, Trudie Hayes continued to write checks on the joint checking account

for Solon's expenses as well as her own. When the conservator was appointed, the court authorized the payment of $750.00 per month to Trudie Hayes for the support of Solon Parsley. These sums were paid to Trudie Hayes on her application.

On July 30, 1982, Trudie Hayes obtained a general power of attorney from Solon Parsley.

On August 21, 1982, before the conservator was appointed, Solon Parsley executed a will at the home of Trudie Hayes in the presence of Trudie Hayes and her partner and friend, Bruce Pack, with Trudie Hayes as the sole beneficiary. It was from this will that Ann Parsley dissented.

On November 21, 1983, the conservatorship had become insolvent. Notwithstanding, Trudie Hayes used the $15,000.00 certificate of deposit to consolidate six personal debts of her own. She testified that she "had" her father endorse the certificate of deposit. The proceeds of the $15,000.00 certificate of deposit was used to pay five or six loans owed by her, one of them being the balance owing on a purchase-money loan for her automobile.

Also, on November 21, 1983, Trudie Hayes conveyed the 105–acre farm that had been conveyed to her by her father, to her partner and close friend, Bruce Pack. This agreement provided that Trudie Hayes had the option of repurchasing the farm for the exact amount that had been paid to her by Bruce Pack. At the time of trial, it does not appear that Bruce Pack had paid her anything for the farm. There was no recorded lien to secure any purchase money indebtedness.

There was much said in the record relative to allegations that Joe Stroud might have gotten money from Solon Parsley before he went to live with Trudie Hayes. Solon Parsley could not drive and Joe Stroud frequently took him to the bank where he withdrew large sums. At the time, Solon Parsley was also frequently visiting with his daughter, Trudie Hayes. The evidence does not establish that Joe Stroud obtained any of this money; the direct evidence was that he did not. In any event, no conduct of Joe Stroud is imputable to the widow, Ann Parsley, and

such conduct has no bearing on the issue in this case.

■ This record is replete with hearsay statements made by Solon Parsley during his lifetime. There was no request for instructions limiting this evidence to the issue of mental capacity of Solon Parsley. The general rule is that hearsay, unobjected to, may be considered and given its natural probative effect, but this court must determine how much weight should be given hearsay in a *de novo* review. *Casone v. State*, 193 Tenn. 303, 246 S.W.2d 22, 28 (1952). Also see *State v. Bennett*, 549 S.W.2d 949, 950 (Tenn.1977). These statements were allegedly made, for the most part, to interested parties and there was no corroboration that the statements were actually made.

■ With respect to these hearsay statements or declarations, we also note that they were admissible only for the limited purpose to show the deceased's mental condition, there being an issue of his mental competence at trial. But the statements were not admissible as evidence of the truth of the statements. See *Peery v. Peery*, 94 Tenn. 328, 29 S.W. 1 (1895); *Hobson v. Moorman*, 115 Tenn. 73, 90 S.W. 152 (1905). We do not find that the statements are of value in establishing the facts asserted in the hearsay declarations.

The Chancellor held that there was a failure of consideration for the transfer by Solon Jackson Parsley to Trudie Hayes of the 105–acre tract of land and also that the conveyance was fraudulent and made for the purpose of defeating Ann Parsley of her elective share in the estate of Solon Jackson Parsley; hence, the transfer was voidable under T.C.A. § 31–1–105. The Chancellor also found that the conveyance to Bruce Pack by Trudie Hayes of this tract of land was voidable. Bruce Pack did not appeal.

The Chancellor also found that the estate of Solon Jackson Parsley was entitled to a judgment against Trudie Hayes for the sum of $15,000.00, the same representing funds transferred to Trudie Hayes for the purpose of defeating the surviving spouse, Ann Parsley, of her elective share in the estate.

The Chancellor also set aside, for the same reasons, the transfer of the mobile home. However, the appellant, Trudie Hayes, does not attack this portion of the judgment in this appeal.

T.C.A. § 31–1–105 provides:

31–1–105. Fraudulent conveyance to defeat share voidable.—Any conveyances made fraudulently to children or others, with an intent to defeat the surviving spouse of his distributive or elective share, is voidable at the election of the surviving spouse.

In *Sherrill v. Mallicote*, 57 Tenn.App. 241, 417 S.W.2d 798 (1967), this Court stated that a transfer made with the intent and purpose to deny the widow of a distributive share of the estate constituted fraud on the marital rights of the wife. In that opinion, the court also stated:

"Intention and purpose are not necessarily the controlling factors in determining whether a transfer is fraudulent. One must take into consideration the effect of the transfer. In other words, if the properties transferred prior to death are of such a quantity in relation to the total estate as the widow is substantially deprived of that which she would otherwise take under our statutes, then from such a transfer fraud may be presumed under certain conditions and circumstances."

■ The record is plain that the farm, the bank accounts and the mobile home transferred to the appellant by Solon Parsley constituted the bulk of his estate. Mr. and Mrs. Parsley had two vehicles, at least one of which was registered to Mr. Parsley. Both of these vehicles were in possession of Ann Parsley at the time of Solon Parsley's death. Ann Parsley also had the household furniture. The automobiles and the furniture, which remained in possession of Mrs. Parsley, were the only assets in the estate not transferred. All of these transfers were made within a period of less than three months after Solon Parsley moved into the residence of Trudie Hayes. These circumstances in and of themselves are sufficient from which fraud may be presumed with respect to both the transfer of the land and the $15,000.00 certificate of deposit. We add

that Trudie Hayes had the right of survivorship under the certificate of deposit. In *Sherrill v. Mallicote, supra,* it was held that there can be no fixed rule in determining when a transfer or gift defrauds a spouse and that each case must be determined on its own facts and circumstances. The Court suggested five factors that might be considered.

We will consider these factors separately. In doing so, we point out that the evidence with respect to the material facts is bitterly disputed. The Chancellor accredited the testimony presented by the wife, Ann Parsley, and we do not find that the evidence preponderates against the Chancellor's finding.

*(1) Was the transfer made without consideration?* The deed recited that the consideration was that Trudie Hayes would care for Solon Parsley during his lifetime. Notwithstanding this provision in the deed, Trudie Hayes applied for and received $750.00 per month from the conservator to maintain her father. Before the allowance of this monthly payment, Trudie Hayes brought expense checks to the conservator and obtained his signature for reimbursement of sums paid by her for the benefit of her father. Before the conservator was appointed, Trudie Hayes wrote checks on her father's account to pay her own personal expenses as well as expenses incurred by Solon Parsley. The consideration of the transfer was the promise of Trudie Hayes to care for Solon Parsley. Her failure to do so would justify an action to enforce her promise; but, since her obligation remained valid there was no failure of consideration. However, the judgment will be affirmed on other grounds.

Trudie Hayes also acquired the interest in the savings account of $18,966.73 and the interest in the checking account in the sum of $7,095.59 as well as the title to the mobile home, the day after Solon Parsley left his wife. The checking account had been used by Mr. and Mrs. Parsley for living expenses and Mr. Parsley checked out the entire balance forming the account jointly with his daughter. Checks that Mrs. Parsley had written for living expenses were dishonored by the bank.

The appellant argues that the transfers were made for gratitude, concern, love and affection, citing *Warren v. Compton,* 626 S.W.2d 12 (Tenn.App.1981). The *Warren* case does not stand for the proposition that a transfer, supported by either a good or a valuable consideration, may circumvent the provisions of T.C.A. § 31–1–105. To the contrary, the Court citing *Brewer v. Connell,* 30 Tenn. 500 (1851), stated:

"It matters not that a fair consideration was paid for the land, if the sale was made fraudulently with the intent to defeat the widow of her dower interest, it is voidable as to her."

Though *Brewer v. Connell* was dealing with the statute as it formerly applied to "dower", the same construction is valid as the statute now applies to a distributive share. The *Warren* Court found that gifts made were not substantial in relation to the total estate and did not infer a fraudulent intent. See 626 S.W.2d at page 18.

*(2) The size of the transfer in relation to the total assets of the donor/spouse.* We have already discussed this factor. The great bulk of the estate was transferred, very substantially reducing the value of the widow's distributive share. This is a very marked distinction in the case at bar and *Warren v. Compton, supra.*

*(3) The time between the transfer and the death of the donor/spouse.* The certificate of deposit was made a joint certificate on February 2, 1982. On November 21, 1983, Solon Parsley transferred his interest in the certificate to Trudie Hayes. The land was conveyed on April 21, 1982. Mr. Parsley died December 8, 1983.

The appellant argues that the record is devoid of any testimony that in April, 1982, Mr. Parsley felt that his death was eminent. We cannot escape considering the facts that in April, 1982, Mr. Parsley was about 79 years of age and in poor health both physically and mentally. We also consider the fact that a person of minimal intelligence with Mr. Parsley's age and condition of health must have realized that he would never again be productive and that there was no reasonable chance that he could rebuild his estate prior to his death, even if he thought

that he would live several more years. He must have known that his estate was being permanently depleted.

*(4) The relation which existed between the husband and wife at the time of the transfer.* The record reveals that Mr. and Mrs. Parsley had a normal relationship until February 1, 1982, when Mr. Parsley left with his daughter. He immediately filed a divorce suit but it was subsequently dismissed. Mrs. Parsley attempted to visit with Mr. Parsley at Trudie Hayes' home on one occasion, but on that occasion Mr. Parsley would not speak with her. We note that there is hearsay evidence in the record that after February 1, 1982, Mr. Parsley made derogatory accusations about Mrs. Parsley, but there is no evidence that there was any factual basis for the accusation. In any event, a feeling of ill-will toward a spouse is not an exception to T.C.A. § 31-1-105.

We agree with the Court in *McClure v. Stegall,* 729 S.W.2d 263 (Tenn.App.1987), that a strained marriage relationship does not of itself establish fraudulent intent. However, in context of this record, it is one factor that we consider along with all of the other facts and circumstances. The strained marriage relationship would logically motivate one to attempt to deprive his or her spouse of any share in an estate in favor of a child or other loved one.

*(5) The source from which the property came.* The appellee concedes that Solon Parsley owned the property in question at the time of his marriage.

We also consider the factor of whether the transfers were "illusory". We cannot say that the transfers were illusory. However, we note that Mr. Parsley retained a joint interest in the bank accounts although his daughter wrote most, if not all, of the checks written on the checking account. His daughter apparently took very good care of him after he moved to her home on February 1, 1982.

We further consider the factor that Mr. Parsley made no provisions for his widow in his will. After conveying to his daughter the great bulk of his estate, he bequeathed all of his property to his daughter in his will.

After considering all of the circumstances, we conclude that the evidence does not preponderate against the factual findings of the Chancellor. To the contrary, we concur with the Chancellor in his findings of fact and application of law.

There was also an issue concerning the competency of Solon Jackson Parsley when the transfers were made. The Chancellor did not respond to this issue. We do not agree that by his silence on this issue, the Chancellor found that Mr. Parsley was competent when the transfers were made. Had we disagreed with the Chancellor on the other issues, we would remand for a determination of the competency issue. However, in view of the Chancellor's judgment and our affirmance, the competency issue is moot.

The judgment of the trial court is affirmed and the case is remanded for further appropriate proceedings consistent with this opinion. Costs are adjudged against the appellant.

TODD, P.J., and CANTRELL, J., concur.